

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

HAYES LEMMERZ INTERNATIONAL, INC., )
)
Appellant, )
)
v. ) No. 04 C 8110
)
NATIONAL STEEL CORPORATION, )
*et al.*, )
)
Appellee. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Appellant Hayes Lemmerz International, Inc.'s ("Lemmerz") appeal of a ruling made by a bankruptcy judge. For the reasons stated below, we affirm the bankruptcy judge's ruling and deny the appeal in its entirety.

## BACKGROUND

Appellee National Steel Corporation ("National") filed for bankruptcy

1

under chapter 11 of the United States Bankruptcy Code ("Code"). Lemmerz entered into a contract with National to buy steel from National. After the parties entered into the contract, National filed for bankruptcy. National later informed Lemmerz that it would have to pay higher prices for the steel that was the subject of the contract. Lemmerz objected to the higher prices, contending that National had breached its obligations under its contract with Lemmerz. Lemmerz asserts that after National filed for bankruptcy, Lemmerz was forced to make a payment to National for the steel that exceeded the amount Lemmerz should have owed under the contract by $1,106,351.54. In the bankruptcy action, Lemmerz, acting as a creditor, requested priority status for an allowance and administrative payment of an expense claim pursuant to Section 503(b) of the Code from the estate of National ("administrative claim"). Lemmerz argued that its increased payment to National, that was not originally agreed to under the contract, should be given first priority as an allowance. National objected to the administrative claim at the bankruptcy proceedings and, after a trial in the bankruptcy court, the bankruptcy judge denied the administrative claim. Lemmerz now appeals the denial of the administrative claim.

## LEGAL STANDARD

A federal district court has jurisdiction, pursuant to 28 U.S.C. § 158, to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings under the *de novo* standard. *In re A-1 Paving and Contracting, Inc.*, 116 F.3d 242, 243 (7th Cir. 1997).

## DISCUSSION

The Code grants the highest priority of payment to "administrative expenses allowed under section 503(b) of [the Code], and any fees and charges assessed against the estate under chapter 123 of title 28. . . ." 11 U.S.C. § 507(a)(1). Section 503(b) of the Code provides in part that there can be an allowance for "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case. . . ." 11 U.S.C. § 503(b)(1)(A). In general, a party may obtain first priority for such an allowance "if the debt both (1) arise[s] from a transaction with the debtor-in-possession and (2) is beneficial to the debtor-in-possession in the operation of the business." *Corporate Assets, Inc. v. Paloian*, 368 F.3d 761, 773 (7th Cir. 2004)(quoting *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir.1984)).

3

## I. Benefit to Operations

In the instant action, the bankruptcy judge concluded that Lemmerz had not shown that the debt was beneficial to National's operations. Lemmerz states that one factor pointed to by the bankruptcy judge was that the steel was purchased by Lemmerz from National at a rate that was below the market rate for steel. Lemmerz claims that the bankruptcy judge failed to take into consideration the testimony of its witness Charles Brown regarding steel market rates. Lemmerz claims that the bankruptcy court also failed to consider the fact that when Lemmerz found an alternate supplier of steel, the new supplier charged "virtually identical prices to those charged by National Steel before the unilateral price increase." (Applt. 9). Lemmerz argues that if the market prices for steel were as high as the bankruptcy judge concluded, the new supplier of steel for Lemmerz would have charged a higher rate. However, Lemmerz had an opportunity to present such evidence to the bankruptcy court. Lemmerz has not shown that the bankruptcy judge disregarded any evidence. Although Lemmerz clearly does not agree with the bankruptcy judge's holding, Lemmerz has not shown that any of the factual findings of the bankruptcy judge and the judge's assessment of the credibility of witnesses in this regard were clearly erroneous. Neither did the bankruptcy judge err to the extent that he made legal determinations concerning the market price of steel.

4

The bankruptcy judge also properly noted that although Lemmerz paid more for the steel than it originally anticipated, Lemmerz received the steel that it sought and did not allege that the steel was defective in any way. The bankruptcy judge properly concluded that Lemmerz did not "incur any actual, necessary costs and expenses of preserving" National Steel's estate. (Op 17-18). The bankruptcy judge also properly found that Lemmerz, in agreeing to make an increased payment to get the steel from National, was mainly acting in its own interest rather than acting in order to benefit the estate of National. (OP 19-20). Lemmerz also argues that even if the bankruptcy judge was correct as to the market price for steel, the higher market price did not mean that Lemmerz's payment over the amount owed under the contract was not of benefit to National's operation and thus warranted a first priority allowance. Lemmerz argues that the additional payment increased National's profitability, improved its cash flow, and lead to the approval of debtor-in-possession financing. First of all, since Lemmerz failed to make this argument to the bankruptcy judge, it waived the argument. *See Matter of Weber*, 25 F.3d 413, 416 (7th Cir. 1994)(stating that the Seventh Circuit "will not on appeal hear an argument not adequately presented to the district court" and that "[t]he same is surely true of arguments not made to bankruptcy judges."). Also, regardless, the argument is without merit. Lemmerz fails to point to evidence that such tangible benefits were

realized by the estate of National. For example, the financing referenced by Lemmerz was approved prior to the date that the amended request for the increased payment went into effect. Lemmerz's contentions that the evidence shows that its increased payments improved National's cash flow is mere speculation and is not a reasonable inference that can be deduced from the evidence in the record. The bankruptcy judge properly concluded that, if National had not sold its steel to Lemmerz, it would have sold the steel to another purchaser for at least the same price it charged to Lemmerz. (OP 12). We also note that Lemmerz, in its efforts to show that National's operations received a benefit, focuses on a case from the Middle District of Florida and a Northern District of Illinois case which are not controlling precedent and are distinguishable from the instant case. Lemmerz finally argues that the estate of National benefitted as a whole because, due to the increased payment by Lemmerz, National avoided paying tens of millions of dollars in damages to Lemmerz that would have been caused by National's breach of the contract with Lemmerz. However, such arguments are nothing more than Lemmerz's attempt to artificially construct a benefit to the estate of National where no true benefit was provided by Lemmerz.

II. *Reading* Test

Lemmerz also argues that its administrative claim should have been granted under the test prescribed in *Reading Co. v. Brown*, 391 U.S. 471 (1968). Lemmerz claims that in *Reading*, the Court held that damages for negligence asserted by a creditor can be claimed as an administrative expense against the bankruptcy estate because the negligence claim is a cost to the debtor's continued business operations and should be given priority treatment. However, *Reading* is distinguishable from the instant action because the claim at issue in *Reading* was a post-petition claim, rather than a pre-petition claim as in the instant action. *Id.* at 473-74. Lemmerz has thus failed to show that the test in *Reading* is applicable in the instant action.

III. Voluntary Payment Doctrine

Lemmerz argues that its administrative claim is not defeated by the voluntary payment doctrine. *See e.g. Montgomery Ward & Co. v. Williams*, 47 N.W.2d 607, 609 (Mich. 1951). Lemmerz claims that it made the increased payment to National under economic duress rather than out of its own volition. We disagree. Such business decisions are made daily by companies in order to promote the efficient operation of the businesses and continue to make profits. It does not however, follow that all such decisions are made under economic duress. Lemmerz has not pointed to evidence that shows that it was subjected to economic duress and

Lemmerz has failed to point to evidence that shows that its purchase of the steel from National was anything other than a voluntary transaction. The bankruptcy judge properly concluded that "[d]espite the Creditor's fervent denials that it agreed to the price increase and that such an increase was inappropriate under the Contract, the Creditor made an affirmative, voluntary decision to pay the price increase . . . ." (OP 28-29).

Also, the bankruptcy judge properly found that the pre-petition contract entered into between Lemmerz and National was not enforceable. *See e.g. N.L.R.B. v. Bildisco and Bildisco*, 465 U.S. 513, 532 (1984). Under the Code, the trustee of bankruptcy "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The Supreme Court of the United States has stated explicitly that "the policy of Chapter 11 is to permit successful rehabilitation of debtors" and has found that the debtor must be able to reject executory pre-petition contracts if the contracts will not permit a successful rehabilitation. *N.L.R.B.*, 465 U.S. at 526. The bankruptcy judge properly noted that it was undisputed that National never assumed the contract between itself and Lemmerz after National filed for bankruptcy. The bankruptcy court also properly concluded that the contract between Lemmerz and National was executory. Thus, the bankruptcy judge properly concluded that the pre-petition contract formed

between Lemmerz and National was not enforceable under the Code, case law, and policies underlying Chapter 11 of the Code.

## IV. Equal Treatment of Debtors

Lemmerz also argues it has itself filed for bankruptcy in Delaware ("Delaware bankruptcy") and Lemmerz makes a plea to the court to treat its administrative claim with added leniency because Lemmerz is also a debtor in bankruptcy. Lemmerz claims that in its bankruptcy action, National sought to be paid as a "critical vendor" and that, because National's request was denied in the Delaware bankruptcy, National raised its prices in the contract that is the subject of Lemmerz's administrative claim in the instant action. However, the bankruptcy judge in the instant action properly concluded that Lemmerz's theory of National's hidden motives is not supported by any credible evidence in the record and is based upon Lemmerz's own speculation. Thus, there has been no showing by Lemmerz that the increased payment requested by National was improper.

## CONCLUSION

Based on the foregoing analysis, we affirm the bankruptcy judge's ruling and deny Lemmerz's appeal in its entirety.

Samuel Der-Yeghiayan
United States District Court Judge

Dated: May 17, 2005